1  Olivier A. Beabeau (#020986)
   Michael F. Ruppert (#035580)
2  Cheyenne A. McLain (#038623)
   GALBUT BEABEAU, P.C.
3  6720 N. Scottsdale Road, Suite 305
   Scottsdale, Arizona 85253
4  Phone:   602.955.1455
   docket@gb.law
5  Attorneys for Plaintiffs

6

7               IN THE UNITED STATES DISTRICT COURT

8                 FOR THE DISTRICT OF ARIZONA

9   Kannyn January and Colby Courter, a        Case No. _____
    married couple; and Jon V A, Incorporated, a
10  California corporation,                     COMPLAINT

11                      Plaintiffs,             (Securities Fraud; Fraud/Constructive
                                                Fraud; Aiding and Abetting; Civil
12        vs.                                   Conspiracy; Alter Ego;
                                                Misappropriation of Funds;
13  Barbara Renee Schreihans and Matthew        Negligence/Negligent
    Edmund French, a married couple;            Misrepresentation)
14  Frenchans, LLC, an Arizona limited liability
    company; Your Tax Coach, LLC, an            JURY TRIAL DEMANDED
15  Arizona limited liability company; Vestige,
    LLC, a Florida limited liability company;
16  Johnny Dominguez and Jane Doe
    Dominguez, a married couple; and John and
17  Jane Does, as trustees of the Renseignement
    Trust,
18
                        Defendants.
19        Plaintiffs Kannyn January, Colby Courter, and Jon V A, Incorporated by and

20  through their undersigned counsel, allege the following:

21                    I.      THE PARTIES

22        1.      Plaintiffs Kannyn January ("January") and Colby Courter ("Courter") are a

23  married couple residing in California.

24        2.      Plaintiff Jon V A, Incorporated d/b/a Ambiance ("Ambiance") is a

25  California corporation.

26        3.      Ambiance's principal place of business is in California.

4.   Defendants Barbara Renee Schreihans ("Schreihans") and Matthew Edmund French ("French") are a married couple residing in Arizona.

5.   Defendant Frenchans, LLC ("Frenchans") is an Arizona limited liability company with its principal place of business in Arizona.

6.   Schreihans and French are members of Frenchans.

7.   Defendant Your Tax Coach, LLC ("YTC") is an Arizona limited liability company with its principal place of business in Arizona.

8.   French is a member of YTC.

9.   The Renseignement Trust (the "Trust") is a member of both Frenchans and YTC.

10.   Upon information and belief, the Trust is a revocable trust established under the laws of Arizona.

11.   Upon information and belief, each of the fictitiously named persons John and Jane Does, as trustees of the Trust, are controlled by or acted in concert with Schreihans and French.

12.   At all times relevant hereto, Schreihans and French acted for the benefit of their marital community, Frenchans, YTC, and the Trust.

13.   At all times relevant hereto, French also acted for the benefit of YTC.

14.   Defendant Vestige, LLC ("Vestige") is, upon information and belief, an administratively dissolved Florida limited liability company.

15.   Defendants Johnny Dominguez ("Dominguez") and Jane Doe Dominguez are, upon information and belief, a married couple residing in Florida.

16.   Dominguez is the sole member of Vestige.

17.   At all times relevant hereto, Dominguez acted on behalf of his marital community and Vestige.

## II. JURISDICTION AND VENUE

18.     Subject matter jurisdiction is proper under 28 U.S.C. § 1332.

19.     January, Courter, and Ambiance are citizens of California and Defendants are citizens of Arizona or Florida.

20.     There is complete diversity of citizenship between January, Courter, and Ambiance, on the one hand, and Schreihans, French, and Dominguez, on the other hand, and the amount in controversy exceeds $75,000.

21.     Personal jurisdiction is proper because Defendants lived and/or carried out business in Arizona at all times material hereto and engaged in securities transactions with Plaintiffs and fraud from Arizona.

22.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2).

## III. THE NATURE OF THE DISPUTE

23.     This action arises from Defendants' fraudulent scheme to offer and sell January securities to secure a $111,000 investment in a purported Amazon e-commerce store venture.

24.     Defendants made numerous misrepresentations, omissions, and misleading statements regarding and related to the development, management, operation, and improvement of Amazon e-commerce stores (collectively, the "E-Commerce Stores") through a purportedly proprietary algorithm that evaluates and identifies trending products and secures profitable margins.

25.     Despite now claiming to be victims of Vestige's and Dominguez's fraud in relation to the E-Commerce Store venture, Schreihans, French, Frenchans, and YTC induced January's investment through months of knowingly false and misleading statements and omissions regarding the E-Commerce Store investment.

26.     Schreihans and French, individually and through their entities Frenchans and YTC, made numerous misrepresentations and misleading statements to January and

Courter regarding the E-Commerce Stores and their historical performance data, projected passive net income, partnership contracts, and operational timelines.

27.    Schreihans and French attempted to cover up their own fraudulent activities and deliberately misled January and Courter to believe they were representing January's and Courter's interests in litigation against Vestige and Dominguez.

28.    Schreihans engaged in further tortious conduct by leveraging her tax services platform to lend false legitimacy to the fraudulent E-Commerce Store venture, solicit investments, and secure Plaintiffs as tax services clients under false promises of tax deductions and credits.

## IV.    GENERAL ALLEGATIONS

**A.    <u>The fraudulent scheme and the Vestige Lawsuit</u>.**

29.    Defendants were active participants in and promoters of a pyramid investment scheme for the sale of E-Commerce Stores.

30.    In solicitation of prospective investors in the E-Commerce Store scheme, Defendants promised substantial passive income through upfront investments in the E-Commerce Stores that would be managed for the investors through the use of a proprietary algorithm that identifies and sells trending products to secure substantial profits.

31.    Schreihans, French, YTC, Frenchans, and the Trust (the "Arizona Defendants") began actively participating in the scheme in or about November 2020.

32.    The Arizona Defendants and Vestige, by and through Dominguez, entered an agreement whereby the Arizona Defendants were paid referral fees from investor funds secured from their solicitation and sale of E-Commerce Stores.

33.    The Arizona Defendants actively marketed the E-Commerce Stores to potential investors (including January), sold significant E-Commerce Store investments (including to January), retained substantial portions of these investments as referral fees

(including from January), and transferred the balance of investor funds to Vestige and Dominguez.

34.    Upon information and belief, Schreihans and/or French formed Frenchans for the purpose of carrying out the E-Commerce Store venture scheme.

35.    In soliciting an investment in the E-Commerce Stores from January, the Arizona Defendants did not disclose their agreement with Vestige or the identities of Vestige or Dominguez.

36.    At all relevant times hereto, the Arizona Defendants maintained complete control over communications with Dominguez and Vestige, and January had no independent means to verify the representations made to her by the Arizona Defendants regarding the investment venture.

37.    After profiting from their role in the scheme, the Arizona Defendants on February 14, 2022 filed a federal lawsuit in the District Court for the District of Arizona (Case No. 2:22-cv-00241-TUC-JZB) against Vestige and Dominguez (the "Vestige Lawsuit") wherein they purport to be victims of the E-Commerce Stores scheme.

38.    The Arizona Defendants claimed to represent the interests of January (and other defrauded investors) in the Vestige Lawsuit despite having: (i) deliberately concealed material facts from January; (ii) made knowing misrepresentations to induce January's investment; and (iii) retained portions of January's investment funds.

**B.    Arizona Defendants' solicitation of January's investment.**

39.    Schreihans met January in 2020 as a customer of January's women's clothing store, Ambiance.

40.    Schreihans cultivated a personal and professional relationship with January and held herself out as a licensed accountant (which she is not), tax strategist, and business coach focused on women-owned businesses and developing wealth for her clients.

41.     Schreihans conducts her tax services business through YTC and actively promotes her and YTC's services through her social media platforms, whereby she claims to have secured significant tax savings for her clients.

42.     Upon information and belief, in or around the winter of 2020, Schreihans began to use her YTC social media platform to solicit investors for the E-Commerce Stores.

43.     Schreihans invited and encouraged January to purchase E-Commerce Store investments in person and on the phone, and Schreihans falsely told January and Courter that she was making significant money from her own investment in E-Commerce Stores.

44.     In response to Schreihans' investment solicitations, January contacted Schreihans on or about April 11, 2021 to express her interest in investing in the E-Commerce Stores.

45.     The next day, on or about April 12, 2021, Schreihans, through a YTC e-mail address, sent January a document titled "What To Expect From Your Investment" (the "Amazon Solicitation Document") and an Amazon E-Commerce Consulting Contract (the "Amazon E-Commerce Contract").

46.     In the Amazon Solicitation Document, Schreihans represented: (i) that the "initial investment gets you a seasoned, done-for-you Amazon storefront" which "covers the cost of the store, administrative fees, and to buy into the algorithm"; (ii) that the Amazon stores generate $20,000 net income per month by the purported algorithm "constantly finding new products that are trending and meet[ing] the requirements for necessary profit margins to maximize income"; and (iii) that the "store's performance is totally hands off on your part – the marketing, purchases, shipping, customer service, and returns are done by our team. The only thing to do on your part is to pay your credit card and pay the invoice for 50% of the profits."

47.     Schreihans included other statements and representations in the Amazon Solicitation Document, such as:

- that "Amazon pays out every other week" but that for the "first 5 months, the profits are held within Amazon's reserve level and then it will release your funds";
- to be patient for the first five months because the investment was "long term";
- that "every" Amazon store is suspended at some point with "no real rhyme or reason"; and
- that Schreihans has "had some clients get a $1mil [sic] dollars worth of stores."

48.     Schreihans included these statements in the Amazon Solicitation Document as a calculated measure to preemptively address potential investor suspicions.

49.     Schreihans used the alleged suspension risks to encourage January to invest in multiple E-Commerce Stores, specifically stating in the Amazon Solicitation Document: "[t]his is why we suggest opening multiple stores from the beginning so that you have other stores making money in case one is suspended for a few weeks."

50.     The Amazon Solicitation Document also contained links to videos of Schreihans making similar statements about the E-Commerce Stores.

51.     Schreihans, in the Amazon Solicitation Document and in other communications, pressured January to invest in three Amazon E-Commerce Stores.

52.     In reliance on Schreihans' representations, January invested in three Amazon E-Commerce Stores and paid Frenchans an initial fee of $37,000 per E-Commerce Store.

53.     On or about April 19, 2021, January and Frenchans entered the Amazon E-Commerce Contract.

54.    The next day, on or about April 20, 2021, January directed her total $111,000 investment to Frenchans as provided for in the Amazon Solicitation Document and the Amazon E-Commerce Contract.

**C.    The Arizona Defendants' misrepresentations, omissions, and misleading statements at the time of solicitation.**

55.    At the time the Arizona Defendants solicited January's investment, the Arizona Defendants knew or had reason to know that their representations about the E-Commerce Stores were false.

56.    At the time the Arizona Defendants solicited January's investment, the Arizona Defendants had worked with Vestige for approximately seven months and had made no less than thirty (30) E-Commerce Store investment referrals to Vestige.

57.    At the time the Arizona Defendants solicited January's investment, the Arizona Defendants had received no returns from any existing E-Commerce Store investments and had not confirmed any existing E-Commerce Stores were producing sales revenue.

58.    At the time the Arizona Defendants solicited January's investment, the Arizona Defendants knew that numerous E-Commerce Stores had failed to open prior to April 2021.

59.    The Arizona Defendants' own E-Commerce Stores, purchased in September 2020, had yet to open and were non-operational as late as April 2021 and May 2021.

60.    At the time the Arizona Defendants solicited January's investment, none of the E-Commerce Store investments with which the Arizona Defendants were involved, personally or as a referral, were profitable.

61.    At the time the Arizona Defendants solicited January's investment, the Arizona Defendants also knew the E-Commerce Store venture was plagued with logistical and operational problems.

62.     Nonetheless, and with this knowledge, the Arizona Defendants falsely promised January that she would secure returns from the E-Commerce Store within five (5) months.

63.     With this knowledge, the Arizona Defendants false represented that January would secure no less than $20,000 in monthly passive income from her E-Commerce Store investments.

64.     With this knowledge, the Arizona Defendants concealed from January the logistical and operational problems that were plaguing the E-Commerce Store venture.

**D.     The Arizona Defendants' ongoing misrepresentations and omissions.**

65.     After securing January's investment, the Arizona Defendants (directly and/or through their agents) engaged in months of misrepresentations and omissions to conceal their fraud.

66.     On or about May 21, 2021, after January completed all purported setup procedures for her E-Commerce Stores (*e.g.*, establishing separate corporate entities, obtaining federal Employer Identification Numbers, and setting up dedicated credit cards and bank accounts for each E-Commerce Store), the Arizona Defendants represented through a YTC shared company e-mail that the E-Commerce Stores would begin generating sales within 12 to 20 weeks of payment.

67.     The Arizona Defendants made this representation knowing that they had not seen returns for any existing E-Commerce Stores.

68.     On or about May 30, 2021, the Arizona Defendants then wrote January "the team is getting all of the licenses and approval for wholesaling" which would take a minimum of 12 weeks.

69.     The Arizona Defendants also told January on or about June 4, 2021 that they had secured partnerships with Costco, Sam's Club, and Vitacost as new distributors for the E-Commerce Stores.

70.     Upon information and belief, Dominguez and Vestige ceased communicating with the Arizona Defendants in June 2021.

71.     Upon information and belief, in late June 2021 and/or early July 2021, the Arizona Defendants demanded Dominguez and Vestige return the E-Commerce Store investment funds.

72.     Nonetheless, on or about July 14, 2021, the Arizona Defendants represented in an e-mail to January that "we're so excited to share that we continue to make progress", that the delay was due "to a new team and new, MASSIVE logistics upgrade", and that they expected January's E-Commerce Stores to open in August.

73.     The Arizona Defendants also represented in the July 14, 2021 e-mail that Schreihans was "working on the backend to get stores up as soon as possible."

74.     On or about August 25, 2021, French wrote to January that "people who have stores newly opened are so excited by their new venture and are eager to open more (a client messaged us yesterday and said I NEED 4 MORE)."

75.     On or about September 21, 2021, French continued to assure January regarding operational timelines, stating to her via text message that "Stores are going up" after January inquired into the status of her E-Commerce Stores.

76.     French thereafter represented to January that her E-Commerce Stores would open in October 2021.

77.     When January inquired into her E-Commerce Store progress again on or about October 2, 2021, French responded "[t]he September crew went up."

78.     French made these representations, all of which were false or misleading, knowing that: (i) communication with Vestige ceased months earlier; (ii) existing stores were not profitable; (iii) no new stores had opened; and (iv) the representations would induce January to maintain her investment with the Arizona Defendants and Vestige and Dominguez and not suspect that she had been defrauded.

79.     January believed and relied upon the Arizona Defendants' false representations.

80.     January believed and trusted Schreihans' and the Arizona Defendants' representations that Schreihans was involved in the ongoing operations of the purported E-Commerce Stores.

81.     The Arizona Defendants' representations were intended to and did keep January from discovering the Arizona Defendants' fraudulent scheme.

82.     January's E-Commerce Stores were never opened.

**E.      The Arizona Defendants are not genuine victims of fraud.**

83.     The Arizona Defendants knowingly made false representations and material omissions to induce January's $111,000 investment and to conceal their fraud.

84.     The Arizona Defendants intentionally acted to cause January damage for their benefit.

85.     The Arizona Defendants profited and retained sums from their involvement in the E-Commerce Store fraudulent scheme.

86.     Upon information and belief, the Arizona Defendants retained referral fees ranging from $5,000 to $7,000 per E-Commerce Store referral (the "Referral Fees") before transferring the remaining funds to Vestige and Dominguez (the "Transferred Sums").

87.     Upon information and belief, the Arizona Defendants secured $751,000 in Referral Fees from their participation in the fraudulent E-Commerce Store scheme.

88.     The Arizona Defendants never returned any portion of January's $111,000 investment to January or reimbursed January for additional expenses incurred in connection with the E-Commerce Store venture.

89.     Beyond their direct financial gains, the Arizona Defendants enjoyed lavish perks from their role in the fraudulent scheme.

90.    In April 2021, Dominguez offered Schreihans partial ownership of a yacht that he intended to purchase using fees and commissions from the E-Commerce Stores.

91.    That same month, Schreihans attended "a lavish party" on Dominguez's yacht that Dominguez hosted for Schreihans and others.

92.    The Arizona Defendants intentionally concealed the illegitimacy of the E-Commerce Store venture to continue receiving substantial financial benefits and luxury perks.

93.    The Arizona Defendants also knowingly mispresented their role in E-Commerce Store operations.

94.    Frenchans represented in the Amazon E-Commerce Contract that it would: (i) "review, research, and select products using its proprietary methods and databases"; (ii) "employ a team of individuals skilled in different aspects of e-commerce who will be responsible for creating and maintain [January's] store[s]"; (iii) "arrange and provide a Customer Support Team; (iv) "maintain oversight of all [January] stores and their performance."

95.    These statements were knowingly false and minimally misleading as the Arizona Defendants never intended to manage or operate the E-Commerce Stores.

**F.    The Arizona Defendants used their entities as interchangeable vehicles for fraud.**

96.    Upon information and belief, Schreihans and French operated YTC and Frenchans as interchangeable entities to facilitate their fraudulent scheme.

97.    Upon information and belief, Schreihans and French commingled their personal assets with those of YTC and Frenchans (including any personal or business assets held in the Trust), and YTC and Frenchans are controlled entirely by Schreihans and French such that there is no distinction between Schreihans, French, YTC, and Frenchans.

98.     For example, Schreihans blurred the line between her YTC and Frenchans operations by, upon information and belief, using her YTC tax services social media platform to advertise the E-Commerce Store venture.

99.     The Arizona Defendants directed significant E-Commerce Store investment communications through YTC staff and e-mails, while French managed investment inquiries through frenchans@gmail.com.

100.    The e-mail address frenchans@gmail.com, is associated with Frenchans.

101.    While the Arizona Defendants directed January's investment payment to Frenchans, and Frenchans and January entered the Amazon E-Commerce Contract, the Arizona Defendants have admitted both Frenchans and YTC entered identical contracts with other referrals.

102.    Upon information and belief, Frenchans retained certain of the investment proceeds and disbursed other portions of the investment proceeds to Schreihans, French, YTC, the Trust, or Vestige, which in turn disbursed funds to Domiguez in his personal capacity.

103.    Upon information and belief, Schreihans and/or French misappropriated and used the investment funds paid to Frenchans by January for their personal benefit.

104.    Upon information and belief, Dominguez misappropriated and used the investment funds paid to Vestige by January for his personal benefit.

**G.      Schreihans' and YTC's tax service agreements and misrepresentations.**

105.    Schreihans and YTC acted as a tax strategist and performed tax return preparation services for January, her martial community, and Ambiance for tax years 2020 and 2021.

106.    At all relevant times hereto and at present, Schreihans held herself out as a licensed tax accountant on her YTC social media platforms.

107.    Schreihans is not licensed as an accountant with the Arizona State Board of Accountancy.

108.    Upon information and belief, Schreihans is not licensed as an accountant with any state regulatory agency.

109.    Upon information and belief, neither YTC nor any of its agents possess tax accounting licenses or credentials.

110.    Upon information and belief, neither Schreihans nor YTC agents possess an Internal Revenue Service ("IRS") Preparer Tax Identification Number.

111.    On or about July 15, 2021, in an e-mail to January, Schreihans offered to secure Plaintiffs substantial tax savings, specifically representing to January annual savings exceeding $40,000 for Plaintiffs on a continuous basis and a "projected gain" of $44,772 for tax year 2021 (the "Tax Strategy E-mail").

112.    Schreihans and YTC characterized their fee as a "one-time" "investment" of $24,000 for these tax strategies and promised savings.

113.    Schreihans attached a Tax Strategies Client Services Agreement to the Tax Strategy E-Mail (the "Tax Strategies Agreement").

114.    In the Tax Strategies Agreement, Schreihans and YTC agreed to provide personalized strategy development and "on demand access" to achieve lower tax liability.

115.    That same day, on or about July 15, 2021, YTC and January entered the Tax Strategies Agreement.

116.    Subsequently, on or about August 28, 2021, January also executed a Tax Services Arrangement Letter (the "Tax Service Arrangement Letter") for YTC's and Schreihans' tax return preparation services.

117.    Plaintiffs paid YTC at total sum of $44,000 for tax strategy and tax preparation services.

118.    January entered the Tax Strategies Agreement and the Tax Service Arrangement Letter based on her reasonable belief that Schreihans, YTC, and/or their agents were certified public accountants or had some type of credential to offer tax related services.

119.    January entered the Tax Service Arrangement Letter and permitted YTC and Schreihans to file Plaintiffs' tax returns based on the reasonable belief that Schreihans, YTC, and/or their agents were, at minimum, legally qualified to prepare tax returns for third parties.

120.    Plaintiffs terminated their professional relationship with Schreihans and YTC in December 2022.

**H.    Schreihans' and YTC's reckless tax advice and improper filings.**

121.    Schreihans and YTC caused Plaintiffs to incur significant additional expenses, including unexpected tax liabilities and third-party costs associated with multiple tax return amendments to correct Schreihans' and YTC's improper advice and/or filings.

122.    For example, on or about February 6, 2022, Schreihans falsely and recklessly assured Ambiance that it qualified for $60,000 in Employee Retention Tax Credits ("ERTC") for the first quarter of the 2021 tax year.

123.    The IRS denied the ERTC claim.

124.    Schreihans and YTC wrote January on or about February 10, 2023 in acknowledgment that the rejection was due to Schreihans' failure to properly divide the ERTC by quarter.

125.    Although Schreihans and YTC filed a new ERTC claim on Ambiance's behalf in or around February 2023, the refiled ERTC claim is still under review by the IRS as of the date of this filing.

126.    Schreihans and YTC also provided reckless or negligent advice regarding January's and Courter's 2020 mortgage interest deduction, directing Plaintiffs' bookkeeper to

15

deduct 100% of a $1,500,000 loan when only half was legally deductible.

127.    Schreihans and YTC recklessly or negligently misrepresented Plaintiffs' potential tax savings and provided reckless tax advice to Plaintiffs.

128.    As a direct and consequent result of Schreihans' and YTC's false, reckless, and/or negligent tax advice and direction, Plaintiffs did not obtain the tax savings promised to them.

129.    As a direct and consequent result of Schreihans' and YTC's false, reckless, and/or negligent tax advice and direction, Plaintiffs incurred more than $13,500 in fees to remedy Schreihans' and YTC's errors and amend and refile Plaintiffs' 2020 and 2021 tax returns.

130.    On or about April 17, 2024 and May 20, 2024, January demanded a $20,000 refund from Schreihans and YTC in relation to their tax advice and direction.

131.    The Arizona Defendants have not responded to January's demands.

132.    Plaintiffs have suffered no less than $170,000 in damages from Defendants' unlawful E-Commerce Store scheme and YTC's and Schreihans' negligent tax services.

## COUNT ONE

### (Securities Fraud – A.R.S. § 44-1991 against all Defendants)

133.    Plaintiffs incorporate every allegation of the Complaint as if herein again alleged in full.

134.    The E-Commerce Stores each constitute a security as defined by the Arizona Securities Act under A.R.S. § 44-1801(27).

135.    In connection with Defendants' offer and sale of the E-Commerce Store securities and January's purchase of said securities, the Arizona Defendants made misleading statements to January as described hereinabove.

136.   In connection with Defendants' offer and sale of the E-Commerce Store securities and January's purchase of said securities, the conduct of Defendants as alleged herein constituted employment of a device, artifice, or scheme to defraud Plaintiffs.

137.   Defendants' actions and/or inactions, perpetrated in connection with the offer and sale of the E-Commerce Store investments to January constitute securities fraud under A.R.S. § 44-1991.

138.   Defendants offered and sold, and/or made, participated in and/or induced the offer and sale of the E-Commerce Store investments to January within or from Arizona in violation of A.R.S. § 44-1991.

139.   Each Defendant, acting for their respective entities and as agents of each other, are liable for violations of A.R.S. § 44-1991 as principals, agents, participants, aiders and abettors, and/or conspirators.

140.   In addition to their primary liability for securities fraud, Schreihans, French, and Dominguez are separately liable as control persons under A.R.S. § 44-1999.

141.   At all times relevant to this action, Schreihans and French exercised direct control over Frenchans and are therefore liable as control persons under A.R.S. § 44-1999.

142.   At all times relevant to this action, French exercised direct control over YTC and is therefore liable as a control person under A.R.S. § 44-1999.

143.   At all times relevant to this action, Dominguez exercised direct control over Vestige and is therefore liable as a control person under A.R.S. § 44-1999.

144.   At all times relevant to this action, Dominguez exercised control over Schreihans, French, Frenchans, and YTC, who acted as agents of Vestige, and is therefore liable as a control person under A.R.S. § 44-1999.

145.   Under A.R.S. §§ 44-1999, 44-2001 and 44-2003, Defendants are jointly and severally liable to January for securities fraud.

146.    Under, *inter alia*, A.R.S. § 44-2001, the E-Commerce Store investments are voidable, and January is entitled to recover the consideration paid, together with interest, attorneys' fees and costs, as well as all other damages January incurred as a result of the actions of Defendants in an amount to be proven at trial.

## COUNT TWO

**(Securities Fraud – A.R.S. § 44-1998 against Schreihans, YTC, French, and Dominguez)**

147.    Plaintiffs incorporate every allegation of the Complaint as if herein again alleged in full.

148.    In connection with January's purchase of the E-Commerce Store investments that were a part of a public offering, Schreihans and YTC offered and sold securities within or from Arizona by means of written materials and/or oral communications that included untrue statements of material fact or omitted to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading, as described hereinabove.

149.    January did not know of the false statements or omissions of material fact.

150.    Schreihans' and YTC's actions and/or inactions, perpetrated in connection with the offer and sale of the E-Commerce Store investments to January, constitute securities fraud under A.R.S. § 44-1998.

151.    Schreihans and YTC offered and sold, and/or made, participated in and/or induced the offer and sale of the E-Commerce Store investments to January within or from Arizona in violation of A.R.S. § 44-1998.

152.    French and Dominguez are liable as control persons under A.R.S. § 44-1999.

153.    At all times relevant to this action, French exercised direct control over YTC and is therefore liable as a control person under A.R.S. § 44-1999.

154.    At all times relevant to this action, Dominguez exercised control over Vestige and Schreihans and YTC, who acted as agents of Vestige, and is therefore liable as a control person under A.R.S. § 44-1999.

155.    Under, *inter alia*, A.R.S. § 44-2001, the E-Commerce Stores investments are voidable, and January is entitled to recover the consideration paid, together with interest, attorneys' fees and costs, as well as all other damages January incurred as a result of the actions of Schreihans, YTC, French, and Dominguez in an amount to be proven at trial.

**COUNT THREE**

**(Fraud/Constructive Fraud against the Arizona Defendants)**

156.    Plaintiffs incorporate every allegation of the Complaint as if herein again alleged in full.

157.    At all times relevant to this action, there existed between the Arizona Defendants and January and Courter a fiduciary and/or confidential relationship upon which January and Courter justifiably relied to their detriment.

158.    At all times relevant to this action, the Arizona Defendants owed January and Courter a fiduciary duty that includes a duty to engage in a full, fair, open, and honest disclosure of everything relating to January's investment in the E-Commerce Stores, and duties of care and loyalty, including the duty to safeguard January's funds and property, not engage in self-dealing, and act fairly and in good faith.

159.    The Arizona Defendants accepted the reliance of January and Courter on the fiduciary and/or confidential relationship.

160.    By entering into the Amazon E-Commerce Contract, Frenchans accepted this reliance by January on the fiduciary relationship.

161.    Schreihans, French, Frenchans, and YTC materially participated in the scheme to defraud January.

162.    Upon information and belief, the Trust materially participated in the scheme to defraud January.

163.    Schreihans, French, Frenchans, and YTC materially benefitted from the scheme to defraud January.

164.    Upon information and belief, the Trust materially benefitted from the scheme to defraud January.

165.    Under the scheme to defraud January, the Arizona Defendants and the Trust misrepresented or omitted, caused to be or knowingly allowed to be misrepresented or omitted, and/or participated in misrepresenting to or concealing material facts from January and Courter as described hereinabove.

166.    Each of the Arizona Defendants' representations and/or omissions was of and concerning material facts that were false.

167.    The Arizona Defendants intentionally prevented January and Courter from discovering the falsity of their representations and/or omissions for their personal benefit.

168.    The Arizona Defendants knew their representations and/or omissions to January and Courter were false when made or concealed or, at a minimum, did not perform the due diligence necessary to discover the truth.

169.    The Arizona Defendants intended for January and Courter to rely on their representations/omissions by misrepresenting and/or concealing material facts from January and Courter as described hereinabove.

170.    January and Courter were ignorant of the falsity of the Arizona Defendants' representations and/or omissions, and the Arizona Defendants intended for January and Courter not to take any corrective action to ensure their scheme could continue.

171.    The Arizona Defendants knew their representations and omissions would harm January and Courter.

172.    January and Courter reasonably relied on, and had a right to rely on, the Arizona Defendants' representations and omissions, and January made and maintained her significant E-Commerce Store investment in connection with the Arizona Defendants' representations and omissions.

173.    Schreihans, French, Frenchans, YTC, and the Trust acted as agents and for the benefit of each other and Vestige and Dominguez in defrauding January.

174.    Schreihans, French, Frenchans, YTC, and the Trust each knowingly and substantially assisted, encouraged, and made it easier for each other and Vestige and Dominguez to perpetuate the E-Commerce Store scheme to misappropriate the assets of January and make misrepresentations to and conceal facts from January and Courter for fiscal gain.

175.    As a direct and proximate result of the Arizona Defendants' fraud, January and Courter have been damaged in an amount to be proven at trial.

## COUNT FOUR

### (Aiding and Abetting against all Defendants)

176.    Plaintiffs incorporate every allegation of the Complaint as if herein again alleged in full.

177.    Vestige and Dominguez misappropriated and converted January's investment and committed unlawful acts to deprive January of her funds and property in violation of Arizona law.

178.    The Arizona Defendants misappropriated and converted January's investment and committed unlawful acts to deprive January of her funds and property in violation of Arizona law and their duties of loyalty and care.

179.    The Arizona Defendants and Vestige and Dominguez made deliberately false statements and omissions to January and Courter regarding material facts about the E-Commerce Store venture.

180.    Each Defendant knowingly or recklessly took affirmative steps to facilitate, coordinate, conceal, and otherwise promote the tortious acts of the other Defendants and are liable to January and Courter for his/her/its unlawful acts in furtherance of the other Defendants' breaches and/or violations of Arizona law.

181.    Each Defendant is jointly and severally liable to January and Courter for the other Defendants' fiduciary duty breaches and property misappropriation due to their aiding and abetting in the commission of these unlawful acts.

182.    January and Courter have suffered damages resulting from Defendants' aiding and abetting of tortious conduct against January and Courter in an amount to be proven at trial.

## COUNT FIVE

### (Civil Conspiracy against the Arizona Defendants)

183.    Plaintiffs incorporate every allegation of the Complaint as if herein again alleged in full.

184.    The Arizona Defendants made preparations in secret to defraud January.

185.    Schreihans, French, Frenchans, and YTC collectively conspired to falsely represent the performance and operational timelines of the E-Commerce Stores as described hereinabove to prevent January and Courter from discovering the Arizona Defendants' actions against January.

186.    Schreihans, French, Frenchans, YTC, and the Trust collectively conspired to conceal from January and Courter the financial performance and operational status and difficulties of the E-Commerce Stores, and to conceal the Arizona Defendants' lack of any meaningful communication with the E-Commerce Stores (via Vestige and Dominquez), to induce January's and Courter's reliance on the Arizona Defendants' false statements and to hide their involvement in the E-Commerce Store pyramid scheme that they had knowingly participated in with Vestige and Dominguez.

187.    Schreihans, French, Frenchans, YTC, and the Trust collectively conspired to falsely represent to January and Courter that they were acting for January's and Courter's benefit in the Vestige Lawsuit to cover for their own unlawful involvement in and advancement of the E-Commerce Store scheme.

188.    Each of the affirmative and concealed acts of Schreihans, French, Frenchans, YTC, and the Trust was an act undertaken in furtherance of a conspiracy to commit fraud to benefit Schreihans and French personally and Frenchans and YTC as described hereinabove.

189.    By their conspiracy, the Arizona Defendants acted for their own pecuniary gain or for their own personal purposes.

190.    As a result of the Arizona Defendants' collective secret efforts, January and Courter were prevented from discovering the fraudulent scheme sooner and were misled into expending personal resources for the benefit of the Arizona Defendants and the Trust, and Vestige and Dominguez.

191.    As a result of the Arizona Defendants' collective secret efforts, January and Courter have expended significant resources to discover the fraudulent conduct of the Arizona Defendants and Vestige and Dominguez.

192.    As a direct and proximate result of the Arizona Defendants' collective secret efforts, January and Courter have been damaged in an amount to be proven at trial.

193.    Because Schreihans, French, Frenchans, YTC, and the Trust conspired with one another, each is jointly and severally liable to January and Courter for all damages caused by the conspiracy, and for the acts of their co-conspirator.

## COUNT SIX

### (Alter Ego against all Defendants)

194.    Plaintiffs incorporate every allegation of the Complaint as if herein again alleged in full.

195.    Upon information and belief, Frenchans is undercapitalized, has comingled its assets with YTC, Schreihans, and/or French and is controlled entirely by Schreihans and French such that there is no distinction between Schreihans, French, YTC and Frenchans.

196.    Upon information and belief, YTC is undercapitalized, has comingled its assets with Frenchans, Schreihans, and/or French and is controlled entirely by Schreihans and/or French such that there is no distinction between Schreihans, French, Frenchans and YTC.

197.    Upon information and belief the Trust is controlled by Schreihans, and/or French.

198.    Upon information and belief, Vestige is undercapitalized, has comingled its assets with Dominguez and is controlled entirely by Dominguez such that there is no distinction between Vestige and Dominguez.

199.    Upon information and belief, Frenchans is unable to return the funds January paid to Frenchans for her investment in the E-Commerce Stores, including the Referral Fees, because Schreihans and/or French used the funds for their personal benefit.

200.    Upon information and belief, YTC is unwilling to provide Plaintiffs a refund for its defective tax advice and filings because Schreihans and/or French used the funds for their personal benefit.

201.    Upon information and belief, Vestige is unable to return the funds January paid to Vestige for her investment in the E-Commerce Stores, including the Transferred Sums, because Dominguez used the funds for his personal benefit.

202.    Schreihans' and French's conduct as described herein demonstrates Frenchans and YTC are the alter egos of Schreihans and French.

203.    Schreihans' and French's conduct as described herein demonstrates the Trust is the alter ego of Schreihans and French.

204.    Dominguez's conduct as described herein demonstrates Vestige is the alter ego of Dominguez.

205.    Adherence to the fiction of Frenchans' separate corporate existence would promote injustice and sanction fraud in that Schreihans, French, YTC, and/or the Trust could retain the Referral Fees.

206.    Adherence to the fiction of YTC's separate corporate existence would promote injustice and sanction fraud in that Schreihans, French, Frenchans, and/or the Trust could retain Plaintiffs' damages resulting from their tax service payments to YTC.

207.    Adherence to the fiction of Vestige's separate corporate existence would promote injustice and sanction fraud in that Dominguez could retain the Transferred Sums.

208.    As Frenchans' and YTC's alter egos, Schreihans and French are personally liable for all obligations, debts, and liabilities of Frenchans and YTC, including those owed to January and Courter.

209.    As Vestige's alter ego, Dominguez is personally liable for all obligations, debts, and liabilities of Vestige, including those owed to January and Courter.

210.    As a result, Schreihans and French are liable for all damages caused by Frenchans and YTC, in an amount to be proven at trial.

211.    As a result, Dominguez is liable for all damages caused by Vestige, in an amount to be proven at trial.

## COUNT SEVEN

### (Misappropriation of Funds against the Arizona Defendants)

212.    Plaintiffs incorporate every allegation of the Complaint as if herein again alleged in full.

213.    At all times relevant to this action, there existed between the Arizona Defendants and January and Courter a fiduciary and/or confidential relationship upon which January and Courter justifiably relied to their detriment.

214.   At all times relevant to this action, the Arizona Defendants owed January and Courter a fiduciary duty that includes a duty to engage in a full, fair, open, and honest disclosure of everything relating to January's investment in the E-Commerce Stores, and duties of care and loyalty, including the duty to safeguard January's funds and property, not engage in self-dealing, and act fairly and in good faith.

215.   At all relevant times to this action, the Arizona Defendants held a position of trust and confidence regarding the use of January's investment funds for her E-Commerce Stores.

216.   The Arizona Defendants accepted the reliance of January and Courter on the fiduciary relationship.

217.   The Arizona Defendants knowingly engaged in a fraudulent scheme whereby Defendants intended to secure from January and deprive January of her investment into the E-Commerce Store venture.

218.   Upon information and belief, the Arizona Defendants used January's investment funds for their personal benefit.

219.   The Arizona Defendants secured January's investment funds under false pretenses and kept, disbursed, and/or used January's investment funds for their personal benefit without January's or Courter's consent.

220.   The Arizona Defendants have failed to, and despite retaining the Referral Fees, reimburse January her E-Commerce Store investment funds that were procured by concealing and/or misrepresenting facts regarding the E-Commerce Store venture.

221.   The Arizona Defendants knowingly and substantially assisted, encouraged, and made it easier for Frenchans and each other to misappropriate the investment funds of January and misrepresent to and conceal facts from January and Courter.

222.   Frenchans' and the other Arizona Defendants' dominion over January's investment funds is inconsistent with January's and Courter's rights and interferes with

January's right to control their property.

223.    As a result of the Arizona Defendants' misappropriation of January's money, January and Courter have been significantly damaged.

224.    January and Courter are entitled to the full value of January's investment funds wrongfully appropriated by the Arizona Defendants and consequential damages in an amount to be proven at trial.

## COUNT EIGHT

### (Negligence/Negligent Misrepresentation against Schreihans)

225.    Plaintiffs incorporate every allegation of the Complaint as if herein again alleged in full.

226.    Schreihans owes Plaintiffs a duty to exercise reasonable care in providing tax advice and tax return preparation services.

227.    Schreihans owes Plaintiffs a duty to accurately represent her and YTC's professional qualifications, licenses, certifications, and credentials relating to tax services.

228.    In the course of transactions detailed herein, in which she had a pecuniary interest, Schreihans gave incorrect and misleading information to Plaintiffs to induce their agreement to obtain her and YTC's tax services including, *inter alia*, that Schreihans, YTC, and/or its agents are licensed tax accountants and certified to prepare tax returns for third parties; and that Plaintiffs qualified for tax deductions and credits that substantially exceeded legal limits.

229.    Schreihans breached her duties to Plaintiffs and failed to exercise reasonable care in providing tax advice and tax return preparation services to Plaintiffs.

230.    Schreihans breached her duties to Plaintiffs and failed to exercise reasonable care in communicating information to Plaintiffs to ensure its accuracy.

231.    Schreihans could reasonably foresee that Plaintiffs would rely on that information, and Plaintiffs did reasonably rely on that information to their detriment.

232. As a result, Plaintiffs have incurred damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs request this Court enter judgment against Defendants and grant them the following relief:

A. For an award of actual and compensatory damages including, but not limited to, the value of the funds wrongfully diverted from Plaintiffs in a sum no less than $170,000.

B. For pre- and post-judgment interest at the applicable rates under Arizona statute;

C. For an order affirming the parties' fiduciary duties; and

D. For any and other further relief as the Court deems proper and equitable under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure as to all issues so triable.

RESPECTFULLY SUBMITTED this 20th day of December, 2024.

GALBUT BEABEAU, P.C.


By:/s/ Olivier A. Beabeau
    Olivier A. Beabeau
    Michael F. Ruppert
    Cheyenne A. McLain
    Attorneys for Plaintiffs